**CHRYSLER MOTORS CORP., Plaintiff,**

v.

**AUTO BODY PANELS OF OHIO, et al., Defendants.**

No. C–1–89–0393.

United States District Court, S.D. Ohio, W.D.

June 29, 1989.

John D. Poffenberger, Cincinnati, Ohio, for plaintiff.

William S. Wyler, William B. Singer, Cincinnati, Ohio, for defendants.

## ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

SPIEGEL, District Judge.

This matter is before the Court on plaintiff Chrysler Motor Corporation's motion for a preliminary injunction (doc. 2) wherein it seeks to halt defendants' manufacture and sale of a pick-up truck fender which functions as a replacement part for a Chrysler Dodge Dakota truck fender, which motion is opposed by the defendants (doc. 9).

The matter came on for hearing on June 22, 1989 at which we considered the arguments of counsel, the content of the affidavits filed, both in support of and in opposition to the motion, and the exhibits (being the alleged infringing fender as well as the genuine fender of the Chrysler Dodge Dakota truck). For the following reasons we conclude that plaintiff's motion for preliminary injunction should be denied.

Plaintiff claims that it obtained a design patent No. 299,019 (hereinafter '019) on December 20, 1988 in which it is claimed "the ornamental design for a truck fender, as shown and described." In its motion Chrysler contends that the design patent involves a new, original and ornamental design for front fenders used on Chrysler Dodge Dakota pick-up trucks, that it is the assignee of the '019 patent and has the right to enforce it against infringers, that the fenders which are the subject of the '019 patent were designed, developed and manufactured by Chrysler at great effort and expense and are manufactured and sold under strict standards of quality, durability and corrosion resistence, that the unauthorized manufacture and sale of imitation replacement Dodge Dakota fenders of substandard quality has and will continue to infringe the '019 patent to plaintiff's detriment unless an injunction is issued, and that Chrysler will suffer irreparable harm unless such alleged unlawful activities are restrained.

Defendants contend that the design of the truck fender at issue is not novel, original or ornamental, but was predominately dictated by functional considerations, which renders it unpatentable as a matter of law. There seems to be no dispute but that defendants' alleged infringing fender is a facsimile of the plaintiff's fender covered by the '019 patent; that defendant's fender is a "crash part" which consumers can obtain from the defendants at a lower price than from Chrysler; that there is a substantial after-market for replacement parts offered by Chrysler; that the defendant Auto Body Panels of Ohio is a small distributor of after-market parts; and that defendant Haur Tay Enterprise Co., Ltd. of Taiwan manufactured the alleged infringing fender exported to the United States.

The United States Court of Appeals for the Federal Circuit, which has exclusive jurisdiction of appeals from decisions of the U.S. District Courts in patent cases, states that a plaintiff is entitled to a grant of a preliminary injunction in a patent infringement suit when it demonstrates: 1) a reasonable likelihood of success on the merits; 2) irreparable harm if the injunction does not issue; 3) the threat and injury to the plaintiff outweighs the threat and harm the injunction may inflict on the defendant; and 4) granting of the preliminary injunction serves the public interest. *See Roper Corp. v. Litton Systems, Inc.*, 757 F.2d 1266, 1269 (Fed.Cir.1985); 35 U.S.C. § 283.

### Reasonable Likelihood of Success on the Merits

Title 35 U.S.C. § 171 provides that "[w]hoever invents any new, original and ornamental design for an article of manufacture may obtain a patent therefor, subject to the conditions and requirements of this title. The provisions of this title relating to patents for inventions shall apply to patents for designs, except as otherwise provided." Section 171 requires that one obtaining a design patent must have invented a "new, original and ornamental design for an article of manufacture." Thus, "a design that is dictated by considerations of function is not a proper subject for a design patent. Furthermore, a design is not patentable if the sole points of novelty or nonobviousness over prior designs are dictated by functional improvements or alterations." Chisum *Patents* § 1.04(2)(d) Vol. 1, pp. 192–194 (citations omitted). With regard to newness or novelty, the degree of difference required to establish novelty in a design patent occurs "when an average observer takes the new design for a different, and not a modified already existing design." *Thabet Mfg. Co. v. Kool Vent Metal Awning Corp. of America,* 226 F.2d 207, 212 (6th Cir.1955). Moreover, a design patent must disclose inventive originality in design and ornamentation, and mere mechanical skill is no more sufficient to constitute inventive art in the case of a design artist than in the case of an engineer. *Thabet, Id.* With regard to ornamental design, the configuration in a design patent "must be designed for aesthetic appeal rather than dictated primarily by functional requirements, and the design as a whole must produce a pleasing impression on the aesthetic sense of the ordinary observer." *Rains v. Cascade Ind., Inc.,* 402 F.2d 241, 247 (3d Cir. 1968) (footnotes omitted).

We are persuaded by the affidavit of A. Gil Spear, Jr., filed in support of the defendants' opposition to the plaintiff's motion for a preliminary injunction, who averred that the design of the '019 patent is obvious in light of the fenders of other vehicles, *i.e.,* the Mazda B1600 Pick–Up Truck for model years 1977–1981, the Toyota Corolla Sedan for model years 1980–1981, the Ford Ranger Pick–Up for model years 1984–1985, and the Nissan Pick–Up for model years 1983 and 1986. Further, it appears that the '019 patent is an obvious combination of previous well-known design features, including the outward protruding lip over the wheel arch; the scoop-out for the headlight bezel; the curved rear edge which comes to a point at the top in order to intersect with other metal parts such as the door and valance panels between the hood and the windshield; the inward line which runs the length of the '019 fender; the backward sloped edge at the top of the '019 fender; and the horizontal creases which are located both front and rear. All of the foregoing were included in earlier fenders, noted above, resulting in the '019 Chrysler fender being an obvious design; it could have been conceived and designed by any auto body designer of ordinary skill in light of earlier fenders used by other manufacturers.

Furthermore, we conclude that the '019 fender was designed according to functional and performance considerations as opposed to aesthetic or ornamental considerations, including the following: the basic size and shape of the wheel arch opening is determined primarily by the size of the tire, turning radius of the wheel and the amount of jounce in the wheel, which jounce is in turn determined by the Dodge Dakota suspension system; the outward protruding lip of the wheel arch serves the function of stiffening and making more rigid the fender, thus preventing "oil-canning" and minimizing vibration, and preventing water and road debris from being thrown up onto the windshield, side mirrors and outer body surface; the scoop out of the side marker lights serves the purpose of permitting a wrap around side marker light in conjunction with the headlight assembly, which side marker directional signals have been required by the Department of Transportation since the 1970s, and which permits the side marker light assembly to be recessed rather than protruding and therefore minimizing damage to the assembly; the inward sloping of the flat

panel behind the wheel arch serves three functions, including catching and concealing road tar and other debris thrown up by the tires which adheres to the fender, permitting the bottom rear of the fender to be attached to the vehicle yet at the same time permitting it to be extended out sufficiently forward to accommodate wheel jounce and the turning radius of the wheel, and strengthening that area of the fender; the three creases above the wheel arch lip stiffen and make rigid the fender and prevent vibration and oil canning; and the backward sloped edge of the top front of the fender ties in with the slope of the leading edge of the hood. The foregoing is not an all inclusive list of the functional aspects of the fender, but suffice to indicate that the design of the Chrysler fender was governed by metallurgical, engineering and production considerations and determined by considerations of function or serve functional purposes. Therefore, the Court concludes that the '019 patent is more functional than ornamental.

Thus, Chrysler cannot meet the reasonable likelihood of success prong of the test for a preliminary injunction because there is a serious question as to the validity of the Chrysler '019 patent in that the Chrysler fender is not "a new, original and ornamental design."

### *Irreparable Harm, Balance of the Equities and the Public Interest*

■ Having concluded that plaintiff's '019 design patent is probably invalid, plaintiff cannot establish the irreparable harm it claims by reason of defendants' alleged infringement. Further, even if the '019 patent were valid, there is a question of whether plaintiff would suffer irreparable harm if the injunction did not issue. Because plaintiff is alleging irreparable harm due to confusion by the public of defendants' allegedly inferior aftermarket fender with plaintiff's fender, irreparable harm would not occur if the defendants' part is of the same quality as plaintiff's product. Defendants dispute plaintiff's contention that defendants' fender is of inferior quality. Furthermore, defendants point out that the packaging material contains the fenders and the fenders themselves are clearly marked as products of the defendant manufacturer, thus minimizing any confusion. Thus, at this stage the Court finds that plaintiff has failed to meet its burden of proving irreparable harm.

Finally, in balancing the equities and the public interest, we conclude that they favor the defendant in this action.

Accordingly, plaintiff's motion for preliminary injunction is hereby denied.

SO ORDERED.